1  **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8

9  Edward C. Sierra,                    )   CIV 06-350-PHX-ROS (MHB)
                                        )
10          Petitioner,                 )   **REPORT AND RECOMMENDATION**
                                        )
11  vs.                                 )
                                        )
12  Dora B. Schriro, et al.,            )
                                        )
13          Respondents.                )
                                        )
14  _____    )

15  TO THE HONORABLE ROSLYN O. SILVER, UNITED STATES DISTRICT JUDGE:

16                              **BACKGROUND**

17          Petitioner Edward C. Sierra, who is confined in the Arizona State Prison Complex in

18  Tucson, Arizona, has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C.

19  § 2254 (Doc. #7) in which he challenges his state court convictions.  Respondents filed an

20  Answer (Doc. #18) on January 10, 2007, and Petitioner filed a Traverse (Doc. #27) on May

21  29, 2007.

22          In October of 2001, special investigators at the Arizona Department of Corrections,

23  Lewis Prison Complex, in Buckeye, Arizona, received information from a confidential

24  informant that Petitioner, an inmate at the Lewis Complex, "had drugs on him."  (Doc. #18,

25  Exh. C at 96-99.)  When confronted with these allegations, Petitioner admitted to hiding

26  drugs on his person, and told correctional officers that he would "produce" them.  (Doc. #18,

27  Exh. C at 108, 120-22.)  Petitioner then voluntarily excreted a 1-inch by 1-inch plastic

28  package containing four balloons filled with heroin and methamphetamine.  (Doc. #18, Exh.

    C at 111, 141-49.)  The State subsequently indicted Petitioner in Maricopa County Superior

Court, charging him with two counts of promoting prison contraband, Class 2 Felonies. (Doc. #18, Exh. G.)  Following a jury trial, Petitioner was convicted as charged, and sentenced to mitigated terms of 14 years' imprisonment on both counts, to be served concurrently.  (Doc. #18, Exh. F at 11; Exhs. H-I.)

On direct appeal, Petitioner raised two issues:  (1) whether the trial court abused its discretion in finding that his statements to correctional officers were voluntary and in compliance with <u>Miranda</u>; and (2) whether there was sufficient evidence to support his convictions.  (Doc. #18, Exh. J.)  The Arizona Court of Appeals rejected these claims, and affirmed Petitioner's convictions and sentences.  (Doc. #18, Exh. K.) Petitioner failed to file a petition for review to the Arizona Supreme Court, and, on July 14, 2004, the Order and Mandate issued, effectively terminating Petitioner's direct appeal.  (Doc. #18, Exh. L.)

On July 7, 2004, Petitioner filed a notice of post-conviction relief, pursuant to Rule 32 of the Arizona Rules of Criminal Procedure.  (Doc. #18, Exh. M.)  In his subsequent petition for post-conviction relief, filed on September 17, 2004, Petitioner raised two claims. (Doc. #18, Exh. N.)  First, he argued that his trial counsel, Michael Scanlan, provided ineffective assistance when he failed to notify Petitioner of a scheduled competency hearing and instead waived his appearance, and stipulated to the submission of the competency issue to the trial court based on the court ordered mental health evaluations, without first reviewing the results of those evaluations with him.  (Doc. #18, Exh. N at 4-6.)  Second, Petitioner argued that his trial counsel was ineffective for failing to request the appointment of a guardian to assist him in "the decision making process."  (Doc. #18, Exh. N at 6-7.)  On March 3, 2005, the trial court denied the petition for post-conviction relief, finding, "Nothing has been presented to show that, but for the claimed errors of counsel, the result would have been different."  (Doc. #18, Exh. O.)  On April 6, 2005, Petitioner filed a timely petition for review to the Arizona Court of Appeals; review was subsequently denied on December 8, 2005.  (Doc. #18, Exhs. P-Q.)  Petitioner did not thereafter file a petition for review to the Arizona Supreme Court.  On August 21, 2006, Petitioner filed the instant timely Petition for Writ of Habeas Corpus.  (Doc. #7.)

1    In his habeas petition, Petitioner raises three grounds for relief.  First, in Ground I, he

2    argues that his trial counsel provided ineffective assistance under the Sixth Amendment to

3    the United States Constitution when he failed to "notify" him of a scheduled competency

4    hearing, and, without "consulting" him, he "waived his presence and signed a stipulation

5    regarding [] Petitioner's competency."  (Doc. #7 at 5.)  Second, in Ground II(a), Petitioner

6    argues that his trial counsel provided ineffective assistance under the Sixth Amendment when

7    he failed to request the appointment of a "guardian *ad litem*" to assist Petitioner in the

8    "decision making process."  (Doc. #7 at 6.)  Third, in Ground II(b), Petitioner argues that the

9    trial court's failure to *sua sponte* appoint a "guardian" for Petitioner violated "the precepts

10   of (fair opportunity) trial rights," and denied him his rights under the Sixth and Fourteenth

11   Amendments.  (Doc. #7 at 6.)

12                                            **DISCUSSION**

13   In their Answer, Respondents argue that Petitioner has failed to properly exhaust his

14   claims in state court.  Although Grounds I and II(a) were presented to the Maricopa County

15   Superior Court and to the Arizona Court of Appeals, Respondents assert that they were never

16   presented to the Arizona Supreme Court.  Respondents further contend that Petitioner never

17   raised the claim alleged in Ground II(b) in any state court.  Moreover, Respondents argue that

18   Petitioner's claims are procedurally defaulted because he would no longer have a remedy if

19   he returned to the state court.  In the alternative, if the Court finds that Grounds I and II(a)

20   are not procedurally defaulted, Respondents claim that Petitioner cannot prevail on the

21   merits.

22   **A.      Exhaustion and Procedural Default**

23   A state prisoner must exhaust his remedies in state court before petitioning for a writ

24   of habeas corpus in federal court.  See 28 U.S.C. § 2254(b)(1) and (c); Duncan v. Henry, 513

25   U.S. 364, 365-66 (1995); McQueary v. Blodgett, 924 F.2d 829, 833 (9th Cir. 1991).  To

26   properly exhaust state remedies, a petitioner must fairly present his claims to the state's

27   highest court in a procedurally appropriate manner.  See O'Sullivan v. Boerckel, 526 U.S.

28   838, 839-46 (1999).  In Arizona, a petitioner must fairly present his claims to the Arizona

Court of Appeals by properly pursuing them through the state's direct appeal process or through appropriate post-conviction relief.  See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999); Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994).  A claim has been fairly presented if the petitioner has described both the operative facts and the federal legal theory on which the claim is based.  See Tamalini v. Stewart, 249 F.3d 895, 898-99 (9th Cir. 2001); Bland v. Cal. Dep't of Corrections, 20 F.3d 1469, 1472-73 (9th Cir. 1994), overruled on other grounds by Schell v. Witek, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc).  The exhaustion requirement will not be met where the petitioner fails to fairly present his claims.  See Roettgen, 33 F.3d at 38.

If a petition contains claims that were never fairly presented in state court, the federal court must determine whether state remedies remain available to the petitioner.  See Harris v. Reed, 489 U.S. 255, 268-270 (1989) (O'Connor, J., concurring); Rose v. Lundy, 455 U.S. 509, 519-20 (1982).  If remedies are still available in state court, the federal court may dismiss the petition without prejudice pending the exhaustion of state remedies.  See id. However, if the court finds that the petitioner would have no state remedy were he to return to the state court, then his claims are considered procedurally defaulted.  See Teague v. Lane, 489 U.S. 288, 298-99 (1989); White v. Lewis, 874 F.2d 599, 602-05 (9th Cir. 1989).  The federal court will not consider these claims unless the petitioner can demonstrate that a miscarriage of justice would result, or establish cause for his noncompliance and actual prejudice.  See Schlup v. Delo, 513 U.S. 298, 321 (1995); Coleman v. Thompson, 501 U.S. 722, 750-51 (1991);  Murray v. Carrier, 477 U.S. 478, 495-96 (1986).

Initially, the record reflects that Grounds I and II(a) were presented to the Maricopa County Superior Court and to the Arizona Court of Appeals.  (Doc. #18, Exhs. N, P.)  As such, the Court finds that Petitioner has fairly presented his claims in a procedurally appropriate manner.  See Swoopes, 196 F.3d at 1010 (In Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by properly pursuing them through the state's direct appeal process or through appropriate post-conviction relief.).  Accordingly, the Court will address the merits of Petitioner's claims as alleged in Grounds I and II(a).

1  However, the Court finds that Ground II(b) was never presented in state court. (Doc. #18,

2  Exhs. J, N, P.) Rather, Petitioner raises this claim for the first time in his habeas petition.

3  By failing to fairly present this claim in state court, Petitioner has failed to exhaust his state

4  court remedies. Moreover, Petitioner would no longer have a remedy if he returned to state

5  court.[1] As a result, this claim is procedurally defaulted.

6        Petitioner has also failed to show "cause and prejudice" for his procedural default, or

7  that the failure to review the claim would result in a fundamental "miscarriage of justice."

8  Pursuant to the "cause and prejudice" test, a petitioner must point to some external cause that

9  prevented him from following the procedural rules of the state court and fairly presenting his

10  claim. "A showing of cause must ordinarily turn on whether the prisoner can show that some

11  objective factor external to the defense impeded [the prisoner's] efforts to comply with the

12  State's procedural rule. Thus, cause is an external impediment such as government

13  interference or reasonable unavailability of a claim's factual basis." Robinson v. Ignacio,

14  360 F.3d 1044, 1052 (9th Cir. 2004) (citations and internal quotations omitted). Ignorance

15  of the State's procedural rules or other forms of general inadvertence or lack of legal training

16  and the Petitioner's mental condition do not constitute legally cognizable "cause" for

17  Petitioner's failure to fairly present his claim.

18        Regarding the "miscarriage of justice," the Supreme Court has made clear that a

19  fundamental miscarriage of justice exists when a Constitutional violation has resulted in the

20  conviction of one who is actually innocent. See Murray, 477 U.S. at 495-96.

21        Petitioner has not established cause for his failure to raise this claim in state court, nor

22  has he shown actual prejudice. Petitioner has also not demonstrated that a miscarriage of

23  justice would result if this issue is not addressed. Thus, Petitioner's claim alleging that the

24  trial court's failure to *sua sponte* appoint a "guardian" violated "the precepts of (fair

25  opportunity) trial rights," and denied him his rights under the Sixth and Fourteenth

26

27      [1] The time has passed to seek post-conviction relief in state court pursuant to Rule

28  32.4(a) of the Arizona Rules of Criminal Procedure. Any attempt to return to state court to properly exhaust his claim would be futile.

1 Amendments is procedurally defaulted and the Court will recommend that this claim be
2 denied.

3 **B.      Merits Analysis**

4          **1.      AEDPA Standard of Review**

5          Pursuant to the AEDPA[2], a federal court "shall not" grant habeas relief with respect
6 to "any claim that was adjudicated on the merits in State court proceedings" unless the State
7 court decision was (1) contrary to, or an unreasonable application of, clearly established
8 federal law as determined by the United States Supreme Court; or (2) based on an
9 unreasonable determination of the facts in light of the evidence presented in the State court
10 proceeding. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000)
11 (O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard
12 of review). "When applying these standards, the federal court should review the 'last
13 reasoned decision' by a state court ... ." Robinson, 360 F.3d at 1055.

14         A state court's decision is "contrary to" clearly established precedent if (1) "the state
15 court applies a rule that contradicts the governing law set forth in [Supreme Court] cases,"
16 or (2) "if the state court confronts a set of facts that are materially indistinguishable from a
17 decision of [the Supreme Court] and nevertheless arrives at a result different from [its]
18 precedent." Taylor, 529 U.S. at 405-06. "A state court's decision can involve an
19 'unreasonable application' of Federal law if it either (1) correctly identifies the governing
20 rule but then applies it to a new set of facts in a way that is objectively unreasonable, or (2)
21 extends or fails to extend a clearly established legal principle to a new context in a way that
22 is objectively unreasonable." Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002).

23         **2.      Ineffective Assistance of Counsel**

24         In Ground I, Petitioner argues that his trial counsel provided ineffective assistance
25 under the Sixth Amendment when he failed to "notify" him of a scheduled competency
26 hearing, and, without "consulting" him, he "waived his presence and signed a stipulation

27

28         [2] Antiterrorism and Effective Death Penalty Act of 1996.

1   regarding [] Petitioner's competency." (Doc. #7 at 5.)  In Ground II(a), Petitioner argues that

2   his trial counsel provided ineffective assistance under the Sixth Amendment when he failed

3   to request the appointment of a "guardian *ad litem*" to assist Petitioner in the "decision

4   making process." (Doc. #7 at 6.)

5   The two-prong test for establishing ineffective assistance of counsel was established

6   by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  In order to prevail

7   on an ineffective assistance claim, a convicted defendant must show (1) that counsel's

8   representation fell below an objective standard of reasonableness, and (2) that there is a

9   reasonable probability that, but for counsel's unprofessional errors, the result of the

10  proceeding would have been different.  See id. at 687-88.

11  Regarding the performance prong, a reviewing court engages a strong presumption

12  that counsel rendered adequate assistance, and exercised reasonable professional judgment

13  in making decisions.  See id. at 690.  "[A] fair assessment of attorney performance requires

14  that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the

15  circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

16  perspective at the time."  Bonin v. Calderon, 59 F.3d 815, 833 (9th Cir. 1995) (quoting

17  Strickland, 466 U.S. at 689).  Moreover, review of counsel's performance under Strickland

18  is "extremely limited": "The test has nothing to do with what the best lawyers would have

19  done.  Nor is the test even what most good lawyers would have done.  We ask only whether

20  some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel

21  acted at trial."  Coleman v. Calderon, 150 F.3d 1105, 1113 (9th Cir. 1998), judgment rev'd

22  on other grounds, 525 U.S. 141 (1998).  Thus, a court "must judge the reasonableness of

23  counsel's challenged conduct on the facts of the particular case, viewed as of the time of

24  counsel's conduct."  Strickland, 466 U.S. at 690.

25  If the prisoner is able to satisfy the performance prong, he must also establish

26  prejudice.  See id. at 691-92; see also Smith v. Robbins, 528 U.S. 259, 285 (2000) (burden

27  is on defendant to show prejudice).  To establish prejudice, a prisoner must demonstrate a

28  "reasonable probability that, but for counsel's unprofessional errors, the result of the

1   proceedings would have been different."  Strickland, 466 U.S. at 694.  A "reasonable

2   probability" is "a probability sufficient to undermine confidence in the outcome."  Id.  A

3   court need not determine whether counsel's performance was deficient before examining

4   whether prejudice resulted from the alleged deficiencies.  See Robbins, 528 U.S. at 286.  "If

5   it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,

6   which we expect will often be so, that course should be followed."  Id. (quoting Strickland,

7   466 U.S. at 697).

8            **a.    Ground I**

9            Petitioner first argues that his trial counsel provided ineffective assistance when he

10  failed to "notify" Petitioner of a scheduled competency hearing, and, without "consulting"

11  Petitioner, trial counsel "waived his presence and signed a stipulation regarding []

12  Petitioner's competency."  (Doc. #7 at 5.)

13           Prior to trial, Petitioner's trial counsel, Mr. Scanlan, filed a "Motion for Pre-Rule 11

14  Screening," asserting that there were "reasonable grounds" to believe that Petitioner "may

15  not be competent to assist in his defense, or enter a plea," and requesting that the trial court

16  order a preliminary examination to determine whether further examination was required.

17  (Doc. #18, Exh. R.)  In support of this motion, Mr. Scanlan asserted that Petitioner had been

18  found "incompetent" in 1996, and that his "DOC psychiatric records show that [he] is mildly

19  retarded with an IQ of 62."  (Doc. #18, Exh. R.)  Mr. Scanlan further cited to a 1997 report

20  prepared by "DOC Psychological Resources," which documented that Petitioner had reported

21  "physical symptoms so substantial as to imply somatic delusions, vague frustration, some

22  depressive flavor, moderate agitation, obsessive compulsive features, grossly disturbed

23  perceptions and thoughts, and clear paranoid ideation," and further documented that test

24  results indicated that Petitioner was "severely schizophrenic."  (Doc. #18, Exh. R.)

25           In accordance with Rule 11, the trial court ordered a "competency screening

26  evaluation report" to be prepared, and further ordered a competency hearing for October 24,

27  2002.  (Doc. #18, Exh. A at 15-16; Exh. S.)  On October 24, the trial court indicated that it

28  had received the "Prescreening Report," which recommended that a complete evaluation be

1   conducted, pursuant to Rule 11, and found that reasonable grounds existed for further

2   examination. (Doc. #18, Exh. T.)  Accordingly, two mental health experts – Eugene Almer,

3   MD and H. Daniel Blackwood, PhD – were ordered to evaluate Petitioner, and to submit

4   their reports to the court prior to the competency hearing, which was scheduled for February

5   6, 2003. (Doc. #18, Exh. U.)  On February 6, however, one of the experts had not submitted

6   his report, and the hearing was continued to March 11, 2003. (Doc. #18, Exh. V.)  The court

7   also notified the parties that the hearing scheduled for March 11 was a "non-evidentiary

8   hearing," and that if the parties "wish[ed] an evidentiary hearing," they were to contact the

9   court and request one. (Doc. #18, Exh. V.)  Petitioner was present during this proceeding.

10  (Doc. #18, Exh. V.)

11          Sometime thereafter, the second report was submitted. (Doc. #18, Exh. B at 6.)  Both

12  mental health experts concluded that Petitioner was competent to stand trial. (Doc. #18, Exh.

13  B at 6.)  Because both reports were submitted prior to the scheduled competency hearing,

14  "the Court accelerated the hearing date up to [February] 27th." (Doc. #18, Exh. B at 6.)  The

15  parties did not request an evidentiary hearing:  instead, on February 27, 2003, the prosecutor

16  and Mr. Scanlan filed a joint stipulation to submit the determination of Petitioner's

17  competency to the trial court based upon the reports of the mental health experts. (Doc. #18,

18  Exh. W.)  At the competency hearing, the court was informed that Petitioner did not receive

19  notice of the hearing. (Doc. #18, Exh. X.)  However, since Petitioner had been found

20  competent by both mental health experts, Mr. Scanlan requested that Petitioner's appearance

21  be waived. (Doc. #18, Exh. B at 6; Exh. X.)  The court granted Mr. Scanlan's request,

22  accepted the parties' stipulation, and, having considered the written reports, found that

23  Petitioner was competent to stand trial. (Doc. #18, Exh. X.)

24          The United States Supreme Court has consistently held that a defendant has a due

25  process right to be present at a proceeding only when "his presence has a relation, reasonably

26  substantial, to the fullness of his opportunity to defend against the charge." Kentucky v.

27  Stincer, 482 U.S. 730, 745 (1987) and United States v. Gagnon, 470 U.S. 522, 526 (1985)

28  (quoting Snyder v. Massachusetts, 291 U.S. 97, 105-06 (1934)).  The Supreme Court has

1    emphasized that the "privilege of presence is not guaranteed 'when presence would be

2    useless, or the benefit but a shadow.'" <u>Stincer</u>, 482 U.S. at 745 (quoting <u>Snyder</u>, 291 U.S.

3    at 106-07). Rather, a defendant has the right to be present only "to the extent that a fair and

4    just hearing would be thwarted by his absence." <u>Stincer</u>, 482 U.S. at 745 and <u>Gagnon</u>, 470

5    U.S. at 526 (quoting <u>Snyder</u>, 291 U.S. at 107-08.)

6          Although the Circuit Courts have not uniformly agreed as to whether a defendant has

7    a constitutional right to be present at a competency hearing, the Ninth Circuit held in <u>Sturgis</u>

8    <u>v. Goldsmith</u>, 796 F.2d 1103, 1108-09 (9th Cir. 1986), that a defendant has a constitutional

9    right to be present at his competency hearing – a "critical stage" of his trial.  In <u>Sturgis</u>, the

10   defendant was present at three of five hearings held to determine whether he was competent

11   to stand trial.  After each of those three hearings, the court concluded that the defendant was

12   not competent.  At two subsequent competency hearings held in the defendant's absence, the

13   court revised its initial conclusion after hearing testimony from additional expert witnesses.

14   The court determined on both occasions that the defendant was, in fact, competent to stand

15   trial.  On review of the district court's denial of the defendant's habeas corpus petition, the

16   Ninth Circuit agreed with Sturgis that the trial court's determination of his competency at a

17   hearing that he did not attend violated his "constitutional right to be present at every stage

18   of the trial where his absence might frustrate the fairness of the proceedings."  796 F.2d at

19   1108.  The court in <u>Sturgis</u>, however, stated that the doctrine of harmless error would

20   preclude reversal if the defendant's absence from the competency hearing was not

21   prejudicial.

22          Even assuming that the facts of the instant case are not distinguishable from <u>Sturgis</u>

23   and Petitioner had a right to be present at his competency hearing, in an ineffective assistance

24   of counsel analysis Petitioner must ultimately demonstrate prejudice.  In an attempt to

25   establish prejudice, Petitioner states: "This prejudiced Mr. Sierra by permitting him to be

26   ruled competent, when Petitioner had previously been found incompetent by state agencies;

27   this allowed Petitioner to be found responsible for the actions which brought about the

28   conviction."  (Doc. #7 at 5.)  However, beyond mere speculation and conjecture as to what

1    might have been, Petitioner fails to demonstrate how the result of the proceeding would have

2    been different had he been notified of the competency hearing and personally appeared.

3    Indeed, it was a non-evidentiary hearing – no evidence was presented and no testimony was

4    heard.  The Court simply considered the experts' written reports – both concluding that

5    Petitioner was competent – and found that Petitioner was competent to stand trial.

6    Furthermore, in Arizona, "[a] trial judge is under a continuing duty to inquire into a

7    defendant's competency, and to order a rule 11 examination *sua sponte* if reasonable grounds

8    exist."  State v. Amaya-Ruiz, 800 P.2d 1260, 1270 (Ariz. 1990).  "This continuing ability to

9    reconsider the issue de novo substantially mitigates any possibility that a defendant would

10    be significantly prejudiced by a pre-trial competency hearing in his absence."  Sturgis, 796

11    F.2d at 1112 (Wallace, J., dissenting).

12           Similarly, the mental health experts' conclusions also undermine any allegation of

13    prejudice resulting from trial counsel's decision to submit the issue of Petitioner's

14    competency to the court on their reports.[3]  Even if the hearing would have been an

15    evidentiary hearing, there would have been no benefit in calling the mental health experts to

16    testify simply to recite their conclusions that Petitioner was competent.  Petitioner's

17    speculations or predictions to the contrary is not persuasive.  See Stincer, 482 U.S. at 745-

18    47(court could not say that defendant's due process rights were violated by his exclusion

19    from witness competency hearing where he gave "no indication that his presence at the

20    competency hearing [] would have been useful in ensuring a more reliable determination as

21    to whether the witnesses were competent to testify," and he presented "no evidence" that

22    would have "assisted either his counsel or the judge in asking questions that would have

23    resulted in a more assured determination of competency."); Gagnon, 470 U.S. at 526-27

24    (defendants' due process rights were not violated by ex parte discussion between trial judge

25    _____

26           [3]  Contrary to Petitioner's representation, his trial counsel did not stipulate that
      Petitioner was competent to stand trial.  Rather, he stipulated to submit the issue of
27    Petitioner's competency to the court based on the mental health experts' reports. (Doc. #18,
      Exh. W.)  The trial court found that Petitioner was competent to stand trial after considering
28    these reports.  (Doc. #18, Exh. X.)

1    and juror because defendants' "could have done nothing had they been at the conference, nor

2    would they have gained anything by attending."); United States v. Barfield, 969 F.2d 1554,

3    1556 (4th Cir. 1992) ("If the government can prove that [the defendant] was, in fact,

4    competent at the time of the trial," his absence at the competency hearing "will not require

5    reversal of the conviction.") (quoting Sturgis, 796 F.2d at 1109).

6          Furthermore, Petitioner testified in his own defense at trial, and articulated coherently

7    his defense that he never possessed the drugs in question and was therefore not guilty of the

8    offense.  (Doc. #18, Exh. D.)  He also invoked his right of allocution at sentencing, and

9    proclaimed his factual innocence as the only reason why judgment should not be imposed.

10   (Doc. #18, Exh. F at 10.) Petitioner has failed to establish prejudice as a result of his

11   involuntary absence at the competency hearing and, as such, the Court will recommend that

12   Petitioner's ineffective assistance of counsel claim as to Ground I be denied.

13         **b.    Ground II(a)**

14         Petitioner next argues in Ground II(a) that his trial counsel provided ineffective

15   assistance of counsel when he failed to request the appointment of a "guardian *ad litem*" to

16   assist Petitioner in the "decision making process." (Doc. #7 at 6.)  However, Arizona law

17   does not provide for the appointment of a "guardian *ad litem*" to an adult defendant in a

18   criminal proceeding.  See A.R.S. §§ 13-101 et seq.  Petitioner's citations to Title 14 – the

19   Arizona Probate Code – is misplaced.  Those sections apply to protective and guardianship

20   proceedings, and do not apply to criminal proceedings, which are governed by Title 13 – the

21   Arizona Criminal Code.  See A.R.S. §§ 14-5101 et seq.  Moreover, Petitioner has failed to

22   cite any authority for the proposition that he had a constitutional right to the appointment of

23   a "guardian *ad litem*."  Thus, if the appointment of a "guardian *ad litem*" to assist him in his

24   criminal trial was not available under Arizona law, or otherwise constitutionally mandated,

25   his trial counsel could not have been ineffective for failing to request the same.  Furthermore,

26   assuming that Petitioner was entitled to a "guardian *ad litem*," he has failed to establish

27   prejudice.

28

It appears that Petitioner is alleging that, if he had been appointed a guardian, he would have been able to better explain the State's favorable plea offer, and Petitioner would have accepted it. However, whether an appointed guardian would have been able to better explain the plea offer and convince Petitioner to accept the plea is purely speculative. Once again, prejudice based on speculation, is insufficient to establish an ineffective assistance of counsel claim under Strickland.

Nonetheless, before trial, the trial court thoroughly explained to Petitioner, in clear, simple terms, the benefits of the State's plea offer and the consequences he would face if he chose to go to trial. (Doc. #18, Exh. C at 51-53.) Following its explanation, the trial court stated, "I just want you to make sure you're aware of what could be in store for you if you're found guilty." (Doc. #18, Exh. C at 51-53.) Petitioner responded: "I mean, I understand the difference between the time what they're offering me, you know, what I mean?" (Doc. #18, Exh. C at 51-53.) To now claim that he did not understand the State's offer, and that he needed further explanation, is unpersuasive. Therefore, Petitioner has failed to establish prejudice. The Court will recommend that Petitioner's ineffective assistance of counsel claim as to Ground II(a) be denied.

## CONCLUSION

Accordingly, the Court finds that the state court's decision regarding Petitioner's ineffective assistance of counsel claims were not contrary to clearly established federal law or based on an unreasonable determination of the facts. The state court's decision is consistent with Strickland.

Having determined that Petitioner's claims alleged in Grounds I and II(a) should be denied on the merits and that his claim asserted in Ground II(b) is procedurally defaulted, the Court will recommend that Petitioner's Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

///

///

1    **IT IS THEREFORE RECOMMENDED:**

2    That the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. #7)

3    be **DENIED** and **DISMISSED WITH PREJUDICE**;

4    This recommendation is not an order that is immediately appealable to the Ninth

5    Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

6    Appellate Procedure, should not be filed until entry of the district court's judgment.  The

7    parties shall have ten days from the date of service of a copy of this recommendation within

8    which to file specific written objections with the Court.  See 28 U.S.C. § 636(b)(1);

9    Fed.R.Civ.P. 6(a), 6(b) and 72.  Thereafter, the parties have ten days within which to file a

10   response to the objections. Failure to timely file objections to the Magistrate Judge's Report

11   and Recommendation may result in the acceptance of the Report and Recommendation by

12   the district court without further review.  See United States v. Reyna-Tapia, 328 F.3d 1114,

13   1121 (9th Cir. 2003).  Failure to timely file objections to any factual determinations of the

14   Magistrate Judge will be considered a waiver of a party's right to appellate review of the

15   findings of fact in an order of judgment entered pursuant to the Magistrate Judge's

16   recommendation.  See Fed.R.Civ.P. 72.

17   DATED this 28th day of December, 2007.

18

19

20   _Michelle H. Burns_

21   Michelle H. Burns
     United States Magistrate Judge

22

23

24

25

26

27

28